IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GEARBOX SOFTWARE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION |
| | § | NO. _____ |
| APOGEE SOFTWARE, LTD. d/b/a | § | |
| 3D REALMS ENTERTAINMENT and | § | |
| INTERCEPTOR ENTERTAINMENT APS, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT AND JURY DEMAND

Plaintiff Gearbox Software, LLC ("Plaintiff") files this Complaint against Defendants Apogee Software, Ltd. d/b/a 3D Realms Entertainment and Interceptor Entertainment ApS (collectively "Defendants"), alleges as follows, upon personal knowledge as to its own actions and upon information and belief as to the actions of Defendants:

## I. PARTIES

1. Plaintiff Gearbox Software, LLC ("Gearbox") is a Texas limited liability company with a principal place of business located at 101 East Park Boulevard, Suite 1200, Plano, Texas 75074.

2. Upon information and belief, Defendant Apogee Software, Ltd. d/b/a 3D Realms Entertainment ("3DR") is a Texas limited partnership with a principal place of business located at 4809 Beltline Road, #111, Mesquite, Texas 75150.

3. Upon information and belief, Defendant Interceptor Entertainment ApS ("Interceptor") is a Danish company with a principal place of business located at Oestre Kanalgade 2, st., 9000 Aalborg, Denmark.

**COMPLAINT AND JURY DEMAND— Page 1 of 15**

## II.  <u>JURISDICTION AND VENUE</u>

4.      This is a civil action seeking damages and injunctive relief for trademark infringement, unfair competition, copyright infringement, and breach of contract arising under 15 U.S.C. § 1114, 15 U.S.C. 1125(a), and 17 U.S.C. § 101 et seq.  Accordingly, the Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.  In addition, the Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367.

5.      Defendants are subject to personal jurisdiction in this district because they reside in or have substantial contact with this district.  By actively pursuing business transactions with 3DR, a resident of this district, for, *inter alia*, rights to federally-registered trademarks, copyrights and other intellectual property owned by Gearbox, another resident of this district, Interceptor has subjected itself to the personal jurisdiction of this district.

6.      Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c) because a substantial part of the events or omissions giving rise to this action occurred in this district, and because Defendant 3DR resides in this district.

## III.  <u>FACTUAL BACKGROUND</u>

### <u>Nature of the Case</u>

7.      This case stems from efforts to illegally exploit Gearbox's intellectual property rights in the Duke Nukem video game franchise.  Specifically, Defendants Interceptor and 3DR have colluded to misappropriate and make infringing use of the Duke Nukem trademarks and copyrights owned by Gearbox.  Gearbox secured its rights on February 2, 2010, upon the execution of an Asset Purchase Agreement ("APA") in which 3DR transferred, with certain very limited exceptions, all Duke Nukem intellectual property ("Duke IP") to Gearbox.  The APA

also specifically required 3DR or its licensees to seek the permission of Gearbox before making use of the Duke Nukem marks after February 2, 2010.

8.     Recently—and without consulting the Duke IP's actual owner, Gearbox—Interceptor announced its intent to develop a Duke Nukem game based upon the various characters, content and intellectual property owned by Gearbox; the proposed game is entitled "Duke Nukem: Mass Destruction."  Apparently, after selling its Duke Nukem IP rights to Gearbox in 2010, 3DR sought to privately convince others that the sale never happened.  The result is the unauthorized development effort that reportedly exists between 3DR and Interceptor.

9.     By attempting to license the unlicensable, assign the unassignable, and effectively re-sell the exclusive rights that Gearbox already purchased in 2010, 3DR breached the terms of its APA with Gearbox, as well as Gearbox's exclusive, federally-protected intellectual property rights.  Unfortunately, the 3DR-Interceptor maneuver has left Gearbox with little choice but to bring these claims.

## Important Background Facts

### Gearbox Bails Out 3DR – The APA

10.     "No good deed goes unpunished."  3DR's actions illustrate the point, given the exceptional amount of support that Gearbox extended to 3DR, its ownership, and the Duke Nukem franchise that Gearbox must protect.

11.     It is worth remembering: Prior to Gearbox's involvement, 3DR languished for *over twelve unsuccessful years* trying to get the Duke Nukem Forever ("DNF") videogame off the ground, and was famously incapable of achieving its goal.  As a result of its own failings, 3DR ultimately found itself mired in protracted litigation with its publisher, Take-Two Interactive Software, Inc. ("Take 2").  Indeed, by 2009, Take 2 was asserting its own claims against 3DR

(e.g., for repayment of funds owed to Take 2, for delivery of a DNF videogame and related source code, etc.).  As of 2010, 3DR's problems were increasing, not decreasing.

12.    Desperate for help—and on the verge of even further ruin, now that 3DR could no longer fund either development or litigation—3DR effectively asked its friends at Gearbox for a life preserver.  Specifically, 3DR asked Gearbox to rescue 3DR from the Take 2 litigation and, if possible, to complete the technological jigsaw puzzle of a videogame that 3DR had been calling DNF.  Because Gearbox had personal ties to 3DR, Take 2, and its fellow Duke Nukem fans, Gearbox agreed to help.

13.    Gearbox's bailout package for 3DR was memorialized in a February 2010 Asset Purchase Agreement ("APA"), wherein Gearbox acquired the Duke Nukem intellectual property rights (the "Duke IP").  Gearbox soon discovered that 3DR's work product was sorely deficient; the mountain of problems subsequently uncovered by Gearbox cannot be captured in this single pleading.

14.    Undeterred, Gearbox kept its part of the bargain in support of 3DR, Duke and their exceptionally patient fans:  In June of 2011, while 3DR quietly enjoyed freedom from its crushing debts and litigation with Take 2, Gearbox delivered the videogame to those DNF fans who had patiently waited over a dozen years for 3DR's delivery of its product.

15.    As it turns out, 3DR was the ultimate beneficiary of its so-called "deal among friends."  After all: 3DR was freed from the litigation it could no longer afford to fight, 3DR's principals received a generous financial guarantee, and DNF was finally shipped.  None of this was likely to occur in the absence of Gearbox's prompt, generous support.  And, for those disappointed by the DNF content that 3DR bungled between 1997-2009, 3DR's misery now had the company of its rescuer, Gearbox.

### 3DR Sues Gearbox – Then Apologizes

16.    For reasons that remain somewhat inexplicable, 3DR took aim against Gearbox in a lawsuit following DNF's release filed in Dallas County in 2013.  In it pleadings, 3DR insisted that it was owed even more than it had already received (e.g., additional royalties, etc.).  Of course, once Gearbox demonstrated the reality of 3DR's fiction, 3DR quickly dropped its suit with no money "owed" or changing hands.

17.    Upon dismissal, Scott Miller issued a public apology to Gearbox, stating, "In all sincerity, we regret the misunderstanding that instigated our lawsuit.  Now that we better understand – and appreciate – the actual nature of our business matters, we have voluntarily withdrawn our claims against Gearbox, with our genuine apologies…"  A copy of 3DR's apology to Gearbox is attached as Exhibit A.  Gearbox graciously accepted the apology.

### Interceptor Announces Its Own, Unauthorized Duke Nukem Game

18.    On February 1, 2014, Interceptor announced that it would be releasing its own version of a Duke Nukem game entitled "Duke Nukem: Mass Destruction."  This infringement of Gearbox's intellectual property rights was announced online, with a stated release date of February 25, 2014.[1]  According to Interceptor's proclamations, the project has been in development since September, 2013.[2]  It appears that Interceptor has even created a Facebook page for "Duke Nukem: Mass Destruction."  These announcements are attached to the Complaint, collectively, as Exhibit B.

19.    On February 13, 2014, Gearbox, through its counsel, issued a cease and desist letter to 3DR (via Scott Miller, a 3DR principal).  The letter demanded that 3DR and its abettors halt

---

[1] https://www.psu.com/a021917/Duke-Nukem-founder-working-on-top-secret-new-PS4-+-PC-title-(describing the "new videogame" revealed by Interceptor Entertainment's CEO, Frederik Schreiber); see also, http://www.neogaf.com/forum/showthread.php?t=761603.
[2] http://www.eurogamer.net/articles/2014-02-03-duke-nukem-mass-destruction-teased-for-pc-ps4 (stating "the game has [only] been in development since September [2013]").

all unauthorized exploitations of Gearbox's Duke Nukem intellectual property.  The letter is attached hereto as Exhibit C, and states in part:

> According to various news outlets—as well as your own admissions within certain correspondence—you and 3DR are colluding with other, equally-unauthorized parties to develop a new video game based upon the Duke Nukem IP.  No developer reveres Duke Nukem and its fans more than Gearbox; it's why Gearbox committed so much to rescuing Duke back in 2010.  As you well know: 3DR's rights were reduced under the terms of that rescue, not expanded.  The Gearbox rights—and 3DR restrictions—imposed by the Asset Purchase Agreement ("APA") and all related contracts executed between the parties (collectively, the "Duke IP Terms") are unwavering, and they are explicit on this point: 3DR's actions breach the Duke IP Terms.

### 3DR's Under Oath Admission of Unauthorized Use

20.    Three days after receiving the cease and desist letter from Gearbox, 3DR—through its principals, Scott Miller and George Broussard—executed  a declaration in which 3DR admitted that neither 3DR nor anyone else possessed the right to develop and publish the "Duke Nukem: Mass Destruction" game (the "3DR Declaration").  As such, 3DR promised to "refrain from any acts that use or violate the Duke IP, which exclusively belongs to Gearbox." Significantly, paragraph 5 of the 3DR Declaration states:

> I am aware that Exhibit 2.2 of the APA states that "all future development in the Duke IP" is a development right exclusively held by Gearbox.  As such, only Gearbox has possessed the right to use the Duke IP in the development of any and all new Duke Nukem games, ancillary projects and materials since February 2010.  Because such rights belong to Gearbox alone, development efforts such as 3DR's "*Duke Nukem: Mass Destruction*" effort with others was not only unauthorized, but a material infringement of the Gearbox's rights.  I apologize to Gearbox for the infringement and breach represented by my efforts.

(Emphasis added.)

The signed 3DR Declaration, dated February 16, 2014, is attached hereto as Exhibit D.

21.    Given that 3DR has admitted i) the unlawful nature of the development and planned distribution of "Duke Nukem: Mass Destruction," and ii) the exclusivity of Gearbox's Duke IP property rights, there can be no doubt that Interceptor's efforts remain unlawful.

22.     Ambitions aside, Interceptor cannot exploit rights it never lawfully possessed; this necessarily includes the rights that 3DR now admits 3DR didn't have (i.e., because they exclusively belonged to Gearbox, not 3DR).  Unfortunately for Interceptor—and any others who have relied upon 3DR's personal assurances in lieu of federal registrations and the like—the 3DR Declaration makes it clear: <u>3DR no longer owns the unrestricted rights to Duke Nukem IP, and 3DR has no right or ability to make any agreements in violation of Gearbox's exclusive rights</u>.

23.     The declarations in Exhibit D prove that 3DR knew it was prohibited from crafting unauthorized deals for things like "Duke Nukem: Mass Destruction."  As 3DR has now admitted, 3DR possessed no authority to license Interceptor to do such work, and any continuation thereof represents an unlawful infringement of Gearbox's rights.

24.     On information and belief, and based on the announcements attached as Exhibit B, Interceptor's new game "Duke Nukem: Mass Destruction" will make unlawful use of Gearbox's IP, including characters, marks, and copyrights in violation of Gearbox's rights under the APA, and federal trademark and copyright law.

**<u>Gearbox's Trademark Rights and Copyright Registrations</u>**

25.     Gearbox holds a valid, incontestable trademark registration for the DUKE NUKEM mark, U.S. Trademark Registration No. 2,578,916.  Gearbox's ownership of an incontestable registration for the DUKE NUKEM mark constitutes conclusive evidence of the validity of the mark and its exclusive right to use the registered mark.  In addition, Gearbox holds a trademark registration for the mark DUKE NUKEM FOREVER, U.S. Trademark Registration No. 4,138,126 and a design mark used in conjunction with its DUKE NUKEM game, U.S. Trademark Registration No. 2,435,065.  These registrations, and relevant assignment

documents, are attached hereto as Exhibit E and incorporated by reference.  In addition to its

registered trademarks, as a result of its use and promotion of the DUKE NUKEM mark, Gearbox

has established valuable recognition for and goodwill in the DUKE NUKEM mark as well as

significant common law trademark rights. (The above-referenced marks shall be collectively

referred to as the "DUKE NUKEM marks.")

26.     Gearbox holds multiple U.S. Copyright Registrations covering its DUKE

NUKEM game, including U.S. Copyright Registration No. PA 1-782-911; U.S. Copyright

Registration No. PA 1-812-111; U.S. Copyright Registration No. PA 1-814-677.  The

registrations are attached hereto as Exhibit F and incorporated by reference. (The above-

referenced copyright registrations shall be referred to collectively as the "Duke Nukem

Copyrights.")

## IV.  CAUSES OF ACTION

### COUNT I

**Trademark Infringement Under the Lanham Act**
**15 U.S.C. § 1114**

27.     Gearbox realleges and incorporates by reference the allegations set forth in

paragraphs 1 through 26 above.

28.     Defendants' wrongful and unauthorized use in commerce of the DUKE NUKEM

marks to promote, marker or sell their products and services constitutes trademark infringement

under 15 U.S.C. § 1114 as it is likely to cause confusion, mistake or deception.

29.     Defendants' activities were committed, willfully, knowingly, maliciously, and in

conscious disregard of Plaintiff's legal rights.

30.     Gearbox has no adequate remedy at law.  Defendants' conduct has caused, and if

not enjoined, will continue to cause immediate and irreparable damage to Gearbox's trademark

rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

31.    Due to Defendants' violations of the Lanham Act, Gearbox is entitled to injunctive relief, actual, compensatory, and punitive damages in an amount to be determined at trial along with its attorneys' fees and costs under 15 U.S.C. § 1117 as this is an exceptional case due to Defendants' willful conduct.

## COUNT II

**Contributory Trademark Infringement Under the Lanham Act Against Defendant 3DR
15 U.S.C. § 1114**

32.    Gearbox realleges and incorporates by reference the allegations set forth in paragraphs 1 through 31 above.

33.    3DR, without any authority to do so and in breach of its agreement with Gearbox, provided Gearbox's DUKE NUKEM product to Interceptor, and thus induced the direct infringement by and/or acted in concert with Interceptor to infringe Gearbox's trademark rights in the DUKE NUKEM marks in connection with Interceptor's "Duke Nukem: Mass Destruction" videogame.

34.    As a result of Defendant's action, Gearbox has been damaged in an amount to be proven at trial.  Gearbox is entitled to recover Defendants' profits, its actual damages, and costs of this action.  Gearbox is further entitled to recover treble damages and attorneys' fees under 15 U.S.C. § 1117 as this is an exceptional case due to Defendants' willful conduct.

## COUNT III

### False Designation of Origin Under the Lanham Act
### 15 U.S.C. § 1125(a)

35.    Gearbox realleges and incorporates by reference the allegations set forth in paragraphs 1 through 34 above.

36.    The DUKE NUKEM marks are distinctive marks that are associated with Gearbox and exclusively identify Gearbox's business, products, and services.

37.    Defendants have used, and continue to use, the DUKE NUKEM marks in connection with goods or services, in commerce, in a manner that is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval of such goods or services.

38.    As a result of Defendants' acts, Gearbox has been damaged in an amount to be proven at trial.  Plaintiff is entitled to recover Defendants' profits, its actual damages, and costs of this action.  Plaintiff is further entitled to recover treble damages and attorneys' fees under 15 U.S.C. § 1117 as this is an exceptional case due to Defendants' willful conduct.

## COUNT IV

### Unfair Competition/False Advertising Under the Lanham Act
### 15 U.S.C. § 1125(a)

39.    Gearbox realleges and incorporates by reference the allegations set forth in paragraphs 1 through 38 above.

40.    Defendants have used and continue to use the DUKE NUKEM marks in connection with goods or services in a manner that constitutes false and misleading descriptions or representations of fact in commercial advertising or promotion, thereby misrepresenting the nature, characteristics, and qualities of their goods, services or commercial activities.

Defendants' use of the DUKE NUKEM marks has deceived or has the capacity to deceive a substantial segment of potential consumers.

41.    As a result of Defendants' acts, Gearbox has been damaged in an amount to be proven at trial.  Gearbox is entitled to recover Defendants' profits, its actual damages, and costs of this action.  Gearbox is further entitled to recover treble damages and attorneys' fees under 15 U.S.C. § 1117 as this is an exceptional case due to Defendants' willful conduct.

## COUNT V

### Copyright Infringement

42.    Gearbox realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 above.

43.    Gearbox is, and at all relevant times has been, the owner of the Duke Nukem Copyrights, which are registered with the U.S. Copyright Office in accordance with the Copyright Act.  The Duke Nukem Copyrights cover, among other things, the audiovisual material and the names, characters, themes, and depictions of the character "Duke Nukem."

44.    Among the exclusive rights granted to Gearbox under the Copyright Act are the rights to reproduce, prepare derivative works, and distribute copies of the protected materials covered by the Duke Nukem Copyrights.

45.    Interceptor, without permission or consent of Gearbox, has used and continues to use material covered by the Duke Nukem Copyrights in the development, creation, sale, promotion, and distribution of its videogame entitled, "Duke Nukem: Mass Destruction."  On information and belief, "Duke Nukem: Mass Destruction" is identical and/or substantially similar to the materials protected by the Duke Nukem Copyrights and constitutes an unauthorized derivative work.  In addition, Interceptor intends, without permission or consent of Gearbox, to

shortly distribute Gearbox's copyrighted material worldwide, further compounding the injury to Plaintiff.  Through its copying, distribution, and use, Interceptor has violated Gearbox's exclusive rights in the Duke Nukem Copyrights as provided by the Copyright Laws of the United States, 17 U.S.C. § 101, et seq.

46.    3DR, Gearbox's licensee, without permission or consent of Gearbox, has used and continues to use Gearbox's copyrighted material in a manner outside the narrow permission granted by Gearbox in the APA.  In doing so, 3DR has violated Gearbox's exclusive rights.

47.    Defendants' foregoing acts of infringement have been willful and intentional, in disregard of and with indifference to the rights of Gearbox.

48.    As a result of Defendants' infringement of Gearbox's copyrights, Gearbox is entitled to maximum statutory damages pursuant to 17 U.S.C. § 504(c) for each infringement of Gearbox's copyrighted material.

49.    Alternatively, Gearbox is entitled to recover its actual damages as well as the Defendants' profits for each act of infringement, pursuant to 17 U.S.C. § 504(b).

50.    Gearbox is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

51.    The conduct of the Defendants is causing and, unless enjoined and restrained by the Court, will continue to cause Gearbox immediate and irreparable harm that cannot be fully compensated by monetary damages.  Gearbox has no adequate remedy at law for Defendants' infringement and, therefore, pursuant to 17 U.S.C. §§ 502 and 503 Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyrights.

## COUNT VI

### Common Law Trademark Infringement and
### Unfair Competition Claim Under Texas Law

52.    Gearbox realleges and incorporates by reference the allegations set forth in paragraphs 1 through 51 above.

53.    Defendants' unauthorized use of the DUKE NUKEM marks constitutes common law trademark infringement and unfair competition, in violation of Texas law.

## COUNT VII

### Breach of Contract Against Defendant 3DR

54.    Gearbox realleges and incorporates by reference the allegations set forth in paragraphs 1 through 53 above.

55.    Gearbox and 3DR entered into an Asset Purchase Agreement ("APA") on February 2, 2010.

56.    Plaintiff performed its contractual obligations under the APA.

57.    Under the express terms of the APA, 3DR retained the right "to create, sell, license, and distribute consumer goods and sundries (other than videogame and videogame-related products) bearing the names, characters, and themes directly relating to the motion pictures, films, movies, videos, and television shows that are promoted in connection with such works. . . ." (emphasis added).

58.    3DR licensed Duke Nukem materials to Interceptor for use with videogame and videogame-related products, including Interceptor's "Duke Nukem: Mass Destruction," in breach of the terms of the APA.

59.    As a result of 3DR's breach, Gearbox has been damaged in an amount to be proven at trial.

COMPLAINT AND JURY DEMAND— Page 13 of 15

60.   Gearbox is entitled to its attorneys' fees and costs pursuant to Chapter 38.001, et

seq. of the Texas Civil Practice and Remedies Code.

## V.  <u>JURY DEMAND</u>

Pursuant to Fed. R. Civ. P. 38(b), Gearbox hereby demands a trial by a jury on all issues

so triable.

## VI.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Gearbox prays for the following relief:

1.      A preliminary and permanent injunction restraining the Defendants from:

    (a) Directly or indirectly infringing Gearbox's registered copyrights in any
manner, including but not limited to, manufacturing, distributing, advertising,
selling, or offering for sale any products that infringe such copyrights;
and

    (b) Directly or indirectly infringing Gearbox's registered or
common-law trademarks in any manner, including but not
limited to, manufacturing, distributing, advertising, selling, or
offering for sale any products that infringe such trademarks;
and

    (c) Using any word, term, name, symbol, or device, or any
combination thereof, on any product or its packaging or
labeling or using any false designation of origin, false, or
misleading description of fact, or false or misleading
representation of fact, which is likely to cause confusion, or to
cause mistake or to deceive as to the affiliation, connection, or
association of a defendant with Gearbox or as to the origin,
sponsorship, or approval of a defendant's goods by Gearbox;
and

2.      A recovery of statutory damages for each infringement of each of Gearbox's

copyrighted works pursuant to 17 U.S.C. § 504 and/or recovery of its actual damages as

well as the Defendants' profits for each act of infringement, pursuant to 17 U.S.C. §

504(b); and

3.   A recovery of compensatory damages and an increase in such award under

15 U.S.C. § 1117; and

4.   An award to Gearbox of exemplary damages; and

5.   An award to Gearbox of its reasonable attorneys' fees and costs of the action; and

6.   Such other and further relief, at law or in equity, to which it may be justly

entitled.


Respectfully submitted,


s/ Michael E. Schonberg
Michael E. Schonberg
  Texas State Bar No. 00784927
  E-mail: mike.schonberg@tklaw.com
William M. Katz, Jr.
  Texas State Bar No. 00791003
  E-mail: william.katz@tklaw.com
Megan Dredla Hoyt
  Texas State Bar No. 24050530
  E-mail: megan.hoyt@tklaw.com

**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas  75201
Telephone: 214.969.1304
Fax: 214.880.3262

**ATTORNEYS FOR PLAINTIFF
GEARBOX SOFTWARE, LTD.**